IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| EMERSON TYRONE JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 10-CV-4124-DEO |
| | ) | |
| vs. | ) | BRIEF IN SUPPORT OF |
| | ) | DEFENDANT'S MOTION TO |
| | ) | VACATE, SET ASIDE OR |
| UNITED STATES OF AMERICA, | ) | CORRECT SENTENCE AND |
| | ) | REQUEST FOR EVIDENTIARY |
| Defendant. | ) | HEARING |

COMES NOW Petitioner Emerson Tyrone Jackson, by his undersigned counsel, and respectfully submits the following Brief in Support of Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255:

**TABLE OF CONTENTS**

I.   STATEMENT OF THE CASE………………………………………………  1

II.  SECTION 2255 STANDARDS……………………………………….........  6

III. INEFFECTIVE ASSISTANCE OF COUNSEL………………………….  7

IV.  CONCLUSION……………………………………………………………..  10

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.     STATEMENT OF THE CASE**

The defendant Emerson Tyrone Jackson was the sole defendant named in a five-count Superseding Indictment filed in the Northern District of Iowa on June 26, 2008. Count I of this Indictment charged Mr. Jackson with Conspiracy to Manufacture and Distribute 50 grams or more of Crack Cocaine, having previously been convicted of two

felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. A conviction for this offense requires a mandatory sentence of life in prison. The other four counts of the Superseding Indictment were as follows:

> II. Distribution of 4.9 Grams of Cocaine Base within a Protected Location and after having been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C), 851 & 860(a);
> III. Distribution of .87 Grams of Cocaine Base within a Protected Location and after having been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C), 851 & 860(a);
> IV. Distribution and Aiding and Abetting the Distribution of .53 Grams of Cocaine Base within a Protected Location and after having been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C), 851 & 860(a) & 18 U.S.C. § 2
> V. Distribution of 1 Gram of Cocaine Base Within a Protected Location and after having been convicted of two felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C), 851 & 860(a)

The four charges in Counts II through V are all Class B felonies, which typically are punishable by a term of imprisonment of up to 20 years. 21 U.S.C. §§ 841(b)(1)(C). This term of imprisonment however, may be enhanced under certain circumstances. If the defendant has a conviction for one prior felony drug offense that has become final the maximum term of imprisonment is increased to up to 30 years. 21 U.S.C. §§ 841(b)(1)(C). If the defendant is found to have committed the offense within 1000 feet of a protected location he is subject to twice the maximum punishment authorized by § 841(b). Therefore, the sentence for a defendant with one prior felony drug conviction would be doubled from 30 years to 60 years. And finally, if the defendant commits any one of the charges enumerated in Counts II through V within 1000 feet of a protected location *and* he has two or more prior convictions for a felony drug offense that have become final such person shall be sentenced to mandatory life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 860(a).

The defendant decided to plead not guilty to the charges in the Superseding Indictment and on July 14, 2008, took this case to trial. The prosecutor presented as evidence at trial the testimony of drug agents regarding their actions and observations during controlled purchase operations from March 2007 through February 2008 in Sioux City, Iowa (PSR ¶ 23). This testimony included descriptions of the purchase of crack cocaine from the defendant, including an explanation of the operation, acquisition of recorded conversations, identification of voices, seizure of crack cocaine purchased and serialized buy money seized from the defendant's person (PSR ¶ 24). The United States also offered the testimony of a number of cooperating witnesses and defendants regarding their involvement with and observations of defendant and his associates in the manufacture and distribution of crack cocaine (PSR ¶ 25). Garner McCoy, Christie Hejhal, Myree Coleman, Abdul Turner, Mark Thomas, Tony Smith, Larry Briscoe, James King, Moses Vanpelt, Laurie Scofield, Kenneth Willis, Antonio Jones, Gailene Jones, Brenda Porter, and Brandon Goolsby all testified regarding their purchase of crack cocaine from the defendant and his associates from 2001 through March 2008. Finally, the government offered into evidence various drug and non-drug evidence, including crack cocaine received in controlled purchases from the defendant, photographs/copies of cash in controlled buy money from the defendant, and surveillance photographs taken during the investigation in this case showing the defendant meeting with informants (PSR ¶ 23).

The defendant's counsel cross-examined the government's witnesses and attempted to impeach their credibility. It was clear from the transcript that the strategy was to attack the charge of conspiracy and to essentially concede the charges of delivery

of crack cocaine and aiding and abetting delivery of crack cocaine.  His attorney was admittedly unaware of the provisions in 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 860(a) that required a life sentence for all of the charges in Counts 2, 3, 4 and 5 of the Superseding Indictment.  The defendant did not testify in his own defense and called no witnesses.

On July 17, 2008, the defendant was found guilty on all five of the charges against him (PSR ¶ 8).  The jury specifically found that Count 1 involved 50 grams or more of cocaine base and that Counts 2 through 5 occurred within 1,000 feet of property comprising a public playground or school.  The defendant did not contest that he had two prior felony drug convictions.

On November 10, 2008, the defendant was sentenced to life in prison on the charge of Conspiracy to Distribute 50 Grams or more of Crack Cocaine with two prior felony drug convictions.  As for the remaining four counts, the Court reviewed the statutory penalties and concluded that 21 U.S.C. § 841(b)(1)(C) required a sentence of 20 years and that with one prior felony drug conviction this would be enhanced to 30 years (Sent. Tr. Volume 2 of 2, pp 57-58).  The Court went on to note that pursuant to 21 U.S.C. § 860(a) if the defendant committed the offense within 1000 feet of a protected location he would be subject to twice the maximum punishment under 21 U.S.C. § 841(b)(1)(C) (Sent. Tr. Volume 2 of 2, p. 58).  Therefore, the Court concluded that the latter statute allowed the Court to double the sentence of a defendant with one prior felony drug conviction from 30 years to 60 years (Sent. Tr. Volume 2 of 2, p. 58).  However, the Court considered this "doubling" statute to be merely advisory (Sent. Tr. p. 72, Volume 2 of 2).  Instead, after the Court initially sentenced the defendant to 360

years, it changed the sentence to 30 years each on Counts 2, 3, 4 and 5, all to be served concurrently (Sent. Tr. Volume 2 of 2 page 74).

The Court and all of the parties failed to consider the provisions of 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 860(a), which requires life imprisonment for a defendant convicted of delivery of crack cocaine within 1,000 feet of a protected location with two prior felony drug convictions. The proceedings were re-convened three days later when the government brought this statute to the Court's attention. In addressing the Court the government stated:

> "I learned through a member of my office that if you look strictly at the language of Title 21 United States Code section 841, particularly (b)(1)(A), the language references a life sentence for anyone convicted of a violation under 860 which is the distribution within a thousand feet of a school and has two prior felony drug convictions which the defendant has in this case." (Sent. Tr. p. 78, Volume 2 of 2).

After some discussion and comments from the Court, defense counsel stated on the record as follows:

> "But I don't think that this defendant was ever properly put on notice of that. Myself, Mr. Wehde, probation, none of us, the Court at no point was made aware that this defendant was facing life on Counts 2 through 5." (Sent. Tr. p. 88, Volume 2 of 2).

> "[N]obody involved in this case knew that he was facing life. It was only after sentencing that the opinion was arrived at. And I know that in the multiple and numerous discussions that Mr. Wehde and I had, we always talked about really his best-case scenario at trial would be to try and beat Count I and maybe get convicted of Counts 2 through 5 because on Counts 2 through 5 those were the counts where they had controlled buys on the defendant and I can say honestly today now with the benefit of 20/20 but he didn't have a prayer of beating those counts. There was no -- I can't see any reasonable jury that I've ever been in front of -- and I've been in front of a number of them -- ever acquitting someone where he's caught red-handed on videotape." (Sent. Tr. Volume 2 of 2, p. 89).

In light of the new information concerning its sentencing options the Court entered judgment against the defendant as it had originally announced at the hearing on

5

November 10, 2008: life on Count 1 and 360 years each on Counts 2, 3, 4 and 5, all to be served concurrently (Sent. Tr. p. 100, Volume 2 of 2).

The defendant Emerson Jackson subsequently appealed his sentence to the United States Court of Appeals for the Eighth Circuit. On appeal he argued that the evidence was insufficient to support his conviction. The Court of Appeals rejected this claim and affirmed the district court's sentence. *United States v. Emerson Tyrone Jackson*, (8th Cir. No. 08-3714).

On December 6, 2010, Mr. Jackson timely filed a pro-se Motion to Vacate pursuant to 28 U.S.C. § 2255. In his pro-se motion Mr. Jackson raised a number of issues, including the following:

(1) Failure to investigate the defendant's dates of incarceration
(2) Violation of 5th Amendment right to due process
(3) Crack to Powder Ratio
(4) Recency Amendment Reduction
(5) Juror Bias
(6) Drug Quantity and Fair Sentencing Act

The Court subsequently appointed counsel and set a timeline to amend or supplement the pro se motion and a deadline to brief the issues. The following brief does not restate everything set forth in Mr. Jackson's pro-se brief. Rather, the following brief focuses on the issue of whether or not Mr. Jackson was adequately informed of the potential penalties against him and whether counsel's failure to properly advise him resulted in him taking his case to trial when he would not have otherwise. Anything else set forth in Emerson Jackson's 2255 Petition which is not specifically addressed in this brief is not waived.

## II. SECTION 2255 STANDARDS

Title 28, Section 2255 of the United States Code states:

6

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A Section 2255 motion "is intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993).

A defendant who petitions the court for § 225 relief is entitled to a hearing "[u]less the motion and files and records of the case conclusively show that the prisoner is entitled to no relief. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005). Therefore, "[a] § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005. Otherwise, "the court shall…grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. In addition, even if the court grants a hearing, the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing. *Id.*

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

"Post conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." *Ledezma-*

*Rodriquez*, 423 F.3d 830, 836 (8th Cir, 2005), *Davis v Norris*, 423 F.3d 868, 877 (8th Cir 2005 ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudiced[d]").

The deficient performance prong requires Emerson Jackson to show his counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. "Strategic choices after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v Rice*, 449 F.3d 887, 897 (8th Cir 2006). "There is a strong presumption that counsel's performance fell within the wide range of professional assistance." *Davis*, 423 F.3d at 877. To satisfy this prong the movant must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Davis v. Norris*, 423 F.3d 868 (8th Cir. 2005). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

In this case there can be no doubt that counsel's performance was deficient by not being aware that the enhancement for a two-time offender convicted of delivery of crack cocaine in a protected location was life in prison. "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.* When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court." *Teague v. Scott,* 60 F.3d 1167, 1171 (5th Cir. 1995).

8

"`By grossly underestimating [the defendant's] sentencing exposure, counsel breaches his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.'" *United States v. Ridgeway,* 321 F.3d 512, 514 (5th Cir. 2003). (See also *Julian v. Bartley*, 495 F.3d 487 (7th Cir. 2007); *United States v. Gaviria*, 116 F.3d 1498 (C.A.D.C. 1997)).

Even if counsel's performance was deficient, the movant must also establish prejudice. *Davis* 423 F.3d at 877. To satisfy this "prejudice" prong the movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rice*, 449 at 897 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability being a probability sufficient to undermine the confidence in the outcome. *Rice*, 449 at 897 (quoting *Strickland*, 466 U.S. at 694). It is not enough for the movant to show that the errors had some conceivable effect on the outcome of the proceeding. *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005).

In the instant case, the defendant clearly was prejudiced by the faulty advice of counsel when he went to trial based upon misinformation concerning the sentencing enhancements in counts 2, 3, 4 and 5. Unbeknown to counsel, all of the charges in the Superseding Indictment carried the same life sentence. Therefore, although the decision to go to trial was ultimately the defendant's, this decision was undoubtedly at least partially based upon counsel's misinformation. As defense counsel admitted at the sentencing hearing, there was no way that the defendant knew that he was facing life on all five of the charges against him. Also, counsel stated that he could never see a reasonable jury returning a verdict of not guilty on a delivery charge where the defendant was caught red-handed on video-tape. Therefore, there is at least a reasonable probability

that, but for counsel's errors, Mr. Jackson would not have gone to trial with the hopeless defense of attacking the conspiracy charge while conceding the delivery charges. Such a defense would have no chance whatsoever of being successful since the only possible outcome would be life in prison. As the sentencing judge commented after discovering that Mr. Jackson had not been advised of his sentencing exposure prior to going to trial:

> "But what's bothering me probably the most is that he decided to stand trial. Now in this court and I believe in all federal courts he has a right to know what his maximum sentence might be before he ever decides to plead not guilty and stand trial. And there is no question that he did not figure that he was facing possible five life sentences". (Sent. Tr. p. 85, Volume 2 of 2).

Under the circumstances of this case both prongs of the Strickland test have been met. Trial counsel failed to perform an essential duty by misinforming the defendant about the possible consequences of going to trial and the defendant was prejudiced by going to trial based upon this misinformation and asserting a hopeless defense. Consequently, for the reasons stated herein Emerson Jackson's decision to proceed to trial was not made knowingly or voluntarily and his Motion to Vacate, Set Aside or Correct the Sentence should be granted on this ground.

## IV. CONCLUSION

For the reasons set forth above, defendant Emerson Jackson respectfully requests the Court to find that he is being held in custody in violation of the Constitution and laws of the United States due to ineffective assistance of counsel. Mr. Jackson requests an evidentiary hearing and following said hearing he requests that his conviction be overturned and that he either be released from custody or a trial be scheduled on the charges in the Indictment.

Respectfully submitted this 18th day of April 2011.

By: s/Douglas Roehrich
DOUGLAS ROEHRICH
705 Douglas Street, suite 402
Sioux City, Iowa 51101
Telephone:     (7l2) 252-4089
Fax:              (7l2) 255-7854
E-mail: roehrichlaw@cableone.net

ATTORNEY FOR DEFENDANT
EMERSON TYRONE JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system that will send notification of such filings to the following:

Shawn Wehde, Assistant United States Attorney