**EMERSON TYRONE JACKSON,**

      Petitioner,

v.

**UNITED STATES OF AMERICA,**

      Respondent.

**No. 10-CV-4124-DEO**

**MEMORANDUM AND OPINION ORDER**

_____

This matter is before this Court on Emerson Tyrone Jackson's (Petitioner's) 28 U.S.C. § 2255 petition, and supplement thereto, to vacate, set-aside, or correct his sentence of November 14, 2008, imposed by this Court. Docket Nos. 1 and 14.

## I.  INTRODUCTION

On June 26, 2008, Petitioner was indicted on 5 counts: (1) conspiracy to manufacture and distribute 50 grams or more of crack cocaine; (2) distribution of 4.9 grams of crack cocaine within 1,000 feet of a school or playground; (3) distribution of .87 grams of crack cocaine within 1,000 feet of a school or playground; (4) distribution and aiding and abetting another in the distribution of .53 grams of crack cocaine within 1,000 feet of a school or playground; and (5) distribution of 1 gram of crack cocaine within 1,000 feet of a school or playground.

08-CR-4022-DEO, Docket No. 19-2. The indictment also noted Petitioner was a repeat felon with two previous drug convictions. Id.

Prior to trial, the Government filed a notice of its intent to seek enhanced penalties for Petitioner's two prior felony drug convictions: (1) "delivery of a controlled substance (cocaine) . . . in the Circuit Court of Mississippi County, Arkansas, Osceola District Criminal Division, case number CR-97-58"; and (2) "delivery of a controlled substance (cocaine base) . . . in the Iowa District Court for Des Moines County, case number FECR002021." Docket No. 35, 2. The Government noted that given these prior felony convictions, Count 1, "pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851," was "punishable by a mandatory minimum sentence of life imprisonment," and Count 2 through 5, pursuant "to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860," were "punishable by . . . a maximum sentence of 40 years' imprisonment . . . ." 08-CR-4022-DEO, Docket No. 35.

This Court conducted Petitioner's jury trial in July of 2008. 08-CR-4022-DEO, Docket Nos. 48, 49, 51, and 53. Attorney Chad Primmer represented Petitioner. At trial, the Government presented evidence of four controlled purchases

from Petitioner, as to counts 2 through 5; including the testimony of law enforcement officers who orchestrated the purchases, the actual crack cocaine purchased from Petitioner, laboratory test results of the crack cocaine purchased, testimony from lab technicians as to the veracity of the lab reports, surveillance photographs, and marked buy money from the controlled purchases found on the Petitioner's person. 08-CR-4022-DEO, Docket No. 93, 6.

In addition, the Government introduced the testimony of 10 witnesses. Abdul Turner testified he provided Petitioner with four to six ounces (113.4 to 170.1 grams) of crack cocaine for distribution per week for four to six months in the Summer of 2002. <u>Id.</u> He also testified that he and Petitioner made at least three trips to St. Louis, Missouri, where they obtained a kilo of cocaine for the purpose of manufacturing and distributing crack cocaine. <u>Id.</u> He also testified that he and Petitioner made at least one trip to Ames, Iowa, to get drugs; and several trips to Sioux Falls, South Dakota, to deliver several ounces of crack cocaine to Charles Rice for redistribution. <u>Id.</u> Mark Thomas testified about his knowledge of Petitioner's trips with Abdul Turner to St. Louis and Ames to get cocaine and to Sioux Falls to

deliver crack cocaine.  Id.  Tony Smith also testified about his knowledge of Petitioner's trips with Abdul Turner.  Id. Brandon Goolsby testified about his personal knowledge of Petitioner's crack distribution.  Id.  Christie Hejhal testified about her role as an informant in a Government orchestrated controlled buy from Petitioner.  She also testified that in 2005 or 2006, for about a year period, she had received a total of three ounces of crack cocaine from Petitioner.  Id.  Myree Coleman testified about his role in a Government controlled buy from Petitioner.  In addition, he testified about a number of drug transactions in 2003 or 2004 in which he delivered 5 ounces of crack cocaine on Petitioner's behalf.  Id.  Garner McCoy testified about his knowledge of and participation in the distribution of crack cocaine with Petitioner in 2002 or 2003 and in 2006 or 2007. Id. at 8.  He also testified about his role in a Government orchestrated controlled buy from Petitioner, his purchase of 2 ounces of crack cocaine from Petitioner for redistribution in 2002 or 2003, his purchase of 4 ounces of crack cocaine from Petitioner for redistribution in 2006, and his knowledge as to the role of others in Petitioner's crack cocaine distribution ring.  Id.  Laurie Scofield testified she

4

obtained at least 5 ounces of crack cocaine from Petitioner in 2005 or 2006 for redistribution.  Id.  Gailene Jones testified she purchased crack cocaine from Petitioner on three to five occasions; she also testified as to her knowledge of Petitioner's sale of crack cocaine to others.  Id.  Finally, Antonio Jones testified that he and Theresa McManigal purchased 1/4 ounce of crack cocaine from Petitioner in the Fall of 2006 for use and redistribution.  Id.

On July 18, 2008, the jury returned a verdict finding Petitioner guilty on all 5 counts.  08-CR-4022-DEO, Docket No. 56-2.  On July 23, 2008, Petitioner filed a motion for a judgment of acquittal, or, in the alternative, a new trial. 08-CR-4022-DEO, Docket No. 57.  On November 10, 2008, this Court denied Petitioner's motions, noting that the evidence in relation to the controlled buys were sufficient to sustain the conviction on the 4 counts of distribution and the one count of aiding and abetting distribution; the ten witnesses who testified as to Petitioner's involvement in a drug conspiracy were sufficient to uphold his conspiracy conviction; and the weight of the evidence did not support the need for a new trial.  08-CR-4022-DEO, Docket No. 82, 5-6.

On November 10, 2008, this Court held a sentencing hearing in which Petitioner was sentenced to a mandatory minimum of life imprisonment on count 1, and 360 months on Counts 2 through 5 to be served concurrently.  08-CR-4022-DEO, Docket No. 86.  08-CR-4022-DEO, Docket No. 83, 1.

Two days after sentencing, the Government filed a notice, arguing Counts 2 through 5 were in fact subject to a statutory mandatory minimum sentence of life in prison.  <u>Id.</u>  On November 13, 2008, this Court held another sentencing hearing and refused to apply the purported statutory mandatory minimum on Counts 2 through 5.[1]  08-CR-4022-DEO, Docket No. 102.

---

[1] In pertinent part, 21 U.S.C. § 841(b)(1)(viii) provides: "[i]f any person commits a violation of this subparagraph [manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute or dispense **50 grams** or more of cocaine base] **<u>or</u>** of section . . . 860 . . . of this title [distributing, possessing with intent to distribute, or manufacturing **<u>any amount</u>** of a controlled substance within one thousand feet of a public school or playground] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment . . . ." (emphasis added).  While this may be interpreted to require that a defendant be sentenced to life in prison if they have two prior felony drug convictions and are further convicted of distributing or possessing with intent to distribute any amount, no matter how minuscule, of a controlled substance within 1,000 feet of a school or playground, this Court does not think this could possibly be what Congress intended; such an interpretation would be fundamentally unfair and contrary to the logic of the remainder of the controlled substances penalty provisions. First, it equates the distribution of any controlled substance

After noting that two of the counts involved the distribution
of less than a gram of crack cocaine, this Court stated it
was:

> not going to give anybody life for that.
> The circuit may end up doing it, but I'm
> not going to do it, so the ruling of the
> Court is that the sentence will not be
> changed, and the sentence that was
> pronounced last Monday . . . will stand,
> and we'll put out a judgment just like
> that. Your exceptions are noted.

Id. at 98.

Subsequently, Attorney Primmer filed an appeal with the
Eighth Circuit, arguing this Court erred in not granting a
judgment of acquittal or new trial. 08-CR-4022-DEO, Docket
No. 110. On August 13, 2009, the Eighth Circuit upheld the
ruling of this Court. On September 9, 2009, the Eighth

---

within 1,000 feet of school or playground, something not
unlikely or, relatively speaking, blameworthy, especially in
rural America, with much more serious sentencing enhancements
found elsewhere in the criminal code. Second, if taken
literally, it ignores the importance of quantity when
determining the ultimate harm to society. Third, it is placed
in a long and convoluted portion of the penalty provisions,
which, in all other aspects, applies only to people convicted
of a violation involving 50 grams or more of crack cocaine.
Finally, it illogically equates chronic drug addicts, who
often distribute small amounts of drugs solely for the purpose
of supporting their drug habit, with far more culpable
defendants who sell large quantities of drugs for profit.

Circuit denied Petitioner's request to hear his appeal en banc. Case No. 08-3714, Entry ID: 3584606.

On December 6, 2010, Petitioner timely[2] filed his 28 U.S.C. § 2255 petition with this Court. Docket No. 1. On January 31, 2011, Attorney Roehrich was appointed as Petitioner's habeas counsel. Docket No. 11. On March 3, 2011, and on April 18, 2011, Attorney Roehrich, Petitioner's appointed counsel, filed supplements to Petitioner's § 2255 petition. Docket Nos. 14 and 18.

Petitioner requests relief on 4 grounds: (1) new sentencing provisions promulgated under the Fair Sentencing Act of 2010; (2) faulty indictment; (3) new guideline provisions; and (4) ineffective assistance of counsel. Docket Nos. 1, 14, and 18.

---

[2] § 2255 imposes a 1-year period of limitations on claims arising therefrom. 28 U.S.C. § 2255(f)(1). The 1-year period of limitations generally begins to run on the date judgment of conviction becomes final. Clay v. U.S., 537 U.S. 522, 527 (2003); 28 U.S.C. § 2255(f)(1). The judgment of conviction became final, in Petitioner's case, when his time for filing a writ of certiorari with the Supreme Court expired. Id.
"The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . But if a petition for re-hearing is timely filed in the lower court . . . the time to file the petition for writ of certiorari . . . runs from the date of the denial of rehearing . . . ." U.S. Sup. Ct. R. 13.3. Thus, Petitioner had until December 9, 2010, to file his 28 U.S.C. § 2255 petition.

## II.   LAW AND ANALYSIS

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a
> court established by Act of Congress
> claiming the right to be released upon the
> ground that [1] the sentence was imposed in
> violation of the Constitution or laws of
> the United States, or [2] that the court
> was without jurisdiction to impose such
> sentence, or [3] that the sentence was in
> excess of the maximum authorized by law, or
> [4] is otherwise subject to collateral
> attack, may move the court which imposed
> the sentence to vacate, set aside or
> correct the sentence.

## A.   The Fair Sentencing Act of 2010

As part of the Fair Sentencing Act of 2010, Congress amended 21 U.S.C. § 841 to require that a defendant, with two prior felony convictions, conspire to manufacture, distribute, dispense, or to possess with an intent to manufacture, distribute, or dispense 280 grams of crack cocaine, rather than the mere 50 grams required when Petitioner was sentenced, in order to be subject to a mandatory minimum of life.[3]   At

_____

[3] This change was made in response to the cacophony of criticism surrounding sentencing disparities between people convicted of distribution of crack cocaine and people convicted of distribution of powdered cocaine.  Prior to the Fair Sentencing Act of 2010, a person convicted of distribution of powdered cocaine could distribute 99 times more product than a person convicted of distribution of crack cocaine and still receive a lesser sentence.  Post the Fair Sentencing Act, a person convicted of powdered cocaine

first glance, this may be read to imply Petitioner's sentence was contrary to law and he is subject to relief pursuant to § 2255. However, the Eighth Circuit has ruled that the statutory changes in the Fair Sentencing Act of 2010 are not retroactive. U.S. v. Sidney, 648 F.3d 904, 908 (8th Cir. 2011). Notably, the decision the Eighth Circuit reached as to the retroactive effect, or lack thereof, of the Fair Sentencing Act is not the decision this Court would have reached.[4] In this Court's judgment, it is disturbing that a system of just laws fails to provide relief to a person who was sentenced to a mandatory minimum of life, though, if convicted two years later, a mandatory minimum of ten years

---

distribution can still distribute 17 times more product than a person convicted of crack cocaine distribution and still be subject to a lesser sentence. Thus, though the Fair Sentencing Act limited the sentencing disparities between people convicted of distribution of crack cocaine and those convicted of distribution of powdered cocaine, a substantial disparity persists.

[4] This Court is not alone in its opinion. In "June of this year . . . the [United States Sentencing] Commission voted to give retroactive effect to the . . . Fair Sentencing Act of 2010," but only in reference to the United States Sentencing Guidelines, which are distinct from the United States Criminal Code. U.S. v. River, 2011 WL 5022734, fn 10 (2nd Cir. 2011). Whereas the United States Criminal Code is enacted by Congress, the Untied States Sentencing Guidelines are created by the United States Sentencing Commission, which derives its authority from Congress and so necessarily lacks the authority to alter Congressional enactments.

would apply.[5]  Regardless, the Eighth Circuit has spoken; and their precedents are binding on this Court.

In addition, even if the Eighth Circuit would have ruled that the Fair Sentencing Act could be retroactively applied to Petitioner, § 2255, as previously noted, only allows for the correction of a sentence if that sentence was in violation of federal law.[6]  The current 21 U.S.C. § 841(b)(1)(B) provides that someone convicted of conspiracy to distribute 28 grams of crack cocaine with at least one prior felony conviction is subject to a mandatory minimum of 10 years and a maximum sentence of life.  Thus, Petitioner's sentence of life in prison was not in violation of even current law, let alone the law applicable at the time of his sentencing.  So, Petitioner is not entitled to relief pursuant to § 2255.

_____

[5] It is even more disturbing for those sentenced on August 2, 2010, a day prior to the Act being signed into law.

[6] 28 U.S.C. § 2255 also provides relief for sentences imposed by Courts without jurisdiction, sentences in excess of applicable law, and sentences in violation of the Constitution.  However, the Constitution is a law, albeit a supreme law, jurisdiction is determined by applicable law, and applicable sentencing ranges is a matter of applicable laws; thus, stated succinctly, 28 U.S.C. § 2255 provides relief to prisoners whose sentence was imposed in violation of federal law, and references to specific species of federal law is redundant.

**B. Indictment**

Petitioner contends that he should have been indicted for conspiracy to distribute 28 rather than 50 grams of crack cocaine. While ultimately unclear, it appears Petitioner feels the evidence against him was insufficient to sustain an indictment for conspiracy to distribute 50 grams.

In <u>Costello v. United States</u>, Justice Black announced the general rule:

> An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits . . . .

350 U.S. 359, 363 (1956).

Unlike a conviction which requires proof beyond a reasonable doubt, a grand jury indictment merely requires probable cause. <u>Bracy v. U.S.</u>, 435 U.S. 1301, 1302 (1978). Since after the grand jury indictment, a trial jury found Petitioner guilty beyond a reasonable doubt. Both this Court and the Eighth Circuit upheld the trial jury's verdict, and Petitioner provides no new evidence suggesting his indictment should be dismissed. This Court must respect the essential and independent role played by grand jury indictments in our

federal system.  Petitioner's request for relief on this basis
is denied.

**C.  New Guideline Provisions**

At the time of Petitioner's sentencing, § 4A1.1 of the
United States Sentencing Guidelines Manual provided that a
defendant receive two additional criminal history points if
they were released from prison due to certain types of
criminal convictions less than two years prior to their
current conviction.  U.S.S.G., Appendix C -Volume III,
Amendment 741.  This guideline provision was applicable to
Petitioner, though it did not affect the outcome of his
sentence.

On November 1, 2010, this "recency" provision was removed
from the guidelines.  <u>Id.</u>  However, as previously noted,
Petitioner was sentenced on Count 1 pursuant to a then valid
statutory, mandatory, minimum sentence of life in prison; and,
as such, his sentence was neither imposed in violation of the
Constitution or laws of the United States, nor in excess of
the maximum authorized by law.  Thus, even if the changes to
§ 4 A1.1 of the United States Sentencing Guidelines were
retroactive, it makes no difference in Petitioner's case and

does not provide grounds to vacate, set-aside, or correct his sentence.

**D. Ineffective Assistance of Counsel**

"[T]he right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970). The Fourteenth Amendment Due Process Clause guarantees the right to a fair trial. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). The Sixth Amendment guarantees the right to assistance of counsel. U.S. Const. Amend. VI. In Strickland, the Supreme Court elaborated on the relationship between the Fourteenth and Sixth Amendments:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

466 U.S. at 686.

The moving party must demonstrate two components to establish ineffective assistance of counsel: (1) counsel's conduct was deficient, and (2) prejudice. 466 U.S. at 687. Counsel's conduct is deficient when it is unreasonable "under prevailing professional norms." Padilla v. Kentucky, 130 S. Ct. 1473, 1481 (2010) (quoting Strickland, 466 U.S. at 688). Counsel's conduct is prejudicial if "counsel's errors" are so

serious that they "deprive the defendant of a fair trial . . . ." 466 U.S. at 687. In other words, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability does not require a different outcome be proven by a "preponderance of the evidence" but does require "a probability sufficient to undermine confidence in the outcome." Id.

Petitioner claims Attorney Primmer, his trial counsel, was ineffective in three respects: (1) he failed to object to a juror who knew one of the witnesses; (2) he failed to argue that Petitioner was in prison during portions of the conspiracy; and (3) he failed to inform Petitioner he was facing potential mandatory minimum sentences of life on counts 2 through 5.

### 1. Failure to Object to a Juror Who Knew a Witness

Nowhere on the record does it indicate that one of the jurors knew a witness; and Petitioner fails to inform this Court the source of his knowledge, the extent of the relationship between the juror and the witness, or the ultimate effect the alleged relationship had on his

conviction. Therefore, this Court has no basis to conclude Attorney Primmer's representation in relation thereto was somehow deficient or to conclude that Petitioner was ultimately prejudiced thereby.

**2. Failure to Argue Petitioner was in Prison During Portions of the Conspiracy**

Petitioner was incarcerated from January 31, 2000, to November 1, 2003, and from April 12, 2005, to October, 13, 2005, and these periods of incarceration do conflict with some of the time frames witnesses testified to at trial. Docket No. 93, 22. For instance, Abdul Turner testified he provided Petitioner with four to six ounces of cocaine per week for four to six months for redistribution as crack in the Summer of 2002; Garner McCoy testified that he participated in the distribution of crack with Petitioner in 2002 or 2003; and Laurie Scofield testified she purchased at least 5 ounces of crack cocaine from Petitioner in 2005 or 2006. Docket No. 93, 7-9.

Though Attorney Primmer otherwise represented Petitioner vigorously, he may not have done as much as he could to draw attention to the Government's time line. Defense counsel have a duty to inform their clients as to the potential

implications of pleading guilty or going to trial, and criminal history plays an often critical role in understanding those implications. In most instances, defense counsel should be aware of a client's previous periods of incarceration, especially if the periods of incarceration were recent; and so, defense counsel's failure to point out that the Government's theory of conspiracy conflicts with periods in which their client was actually incarcerated, may constitute deficient representation. However, Petitioner has provided no evidence or testimony explaining if or why Attorney Primmer should have known of his previous periods of incarceration. Petitioner also has not bothered to show this Court which aspects of the testimony against him conflicted with his periods of incarceration. As such, Petitioner has not met his burden of showing Attorney Primmer's representation was deficient.

Furthermore, ten witnesses testified against Petitioner, attributing 2,362.95 grams of crack cocaine to Petitioner's dealings; and the controlled buy evidence that Petitioner sold 7.3 grams of crack cocaine was nearly incontrovertible.[7] Thus, even if Attorney Primmer had noted that Abdul Turner's

---

[7] It was documented on video and audio recordings.

testimony accused Petitioner of engaging in illegal activities when incarcerated, and Garner McCoy and Laurie Scofield discussed vague time periods, parts of which overlapped with times Petitioner was incarcerated, it cannot be said Petitioner was prejudiced. Simply stated, the evidence, even considering Petitioner's periods of incarceration, overwhelmingly supported the jury's finding that Petitioner was guilty of conspiring to distribute 50 grams or more of crack cocaine.

### 3. Failure to Properly Inform Petitioner About Mandatory Minimum Sentences of Life for Counts 2 Through 5

As previously noted, this Court did not sentence Petitioner to a mandatory minimum of life for Counts 2 through 5. While 21 U.S.C. § 841(b)(1)(viii) can be read to require a mandatory minimum of life on Counts 2 through 5, considering Petitioner's two previous convictions, this Court is persuaded such an interpretation is fundamentally unfair and contrary to the logic of the remainder of the United States Criminal Code's controlled substances offense penalties.[8]

At Petitioner's habeas hearing of December 15, 2011, Attorney Primmer testified that he failed to advise his client

---

[8] See footnote #1.

18

that he could be subject to potential life sentences on counts 2 through 5.  As the Court of Appeals for the Fifth Circuit stated in <u>Teague v. Scott</u>:

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court.

60 F.3d 1167, 1171 (5th Cir. 1995).

Thus, in this Court's opinion, Attorney Primmer's representation was deficient.  Still, this Court thinks it is important to note that Attorney Primmer's failure in this instance was understandable, especially considering the bizarre placement of the potential penalty provision for counts 2 through 5 in 21 U.S.C. § 841(b)(1)(viii) (a section which otherwise deals with 50 grams or more of crack cocaine) and the fact that the Government, U.S. Probation, and this Court were also unaware of the potential punishment.  However, what is understandable and what is constitutionally required are not the same thing.

As previously noted, once a petitioner establishes that his counsel's representation was deficient, he must still show that prejudice resulted.  Petitioner maintains that if he had

known he was potentially facing 5 life sentences, he would have pursued a plea deal. Docket No. 14, 3. Though Petitioner's argument is logically plausible in that a reasonable person in Petitioner's position would have sought a plea deal, especially considering Attorney Primmer's strategy at trial was to concede counts 2 through 5 and contest count 1, the testimony presented at the hearing of December 15, 2011, does not support the conclusion that this particular Petitioner would have sought a plea deal. First, Petitioner's claim that he would have sought a plea deal is undermined by the fact that it was clear from Petitioner's testimony that his recollections of his criminal proceedings were, at best, limited. Second, upon cross-examination, Petitioner maintained that, despite all of the evidence against him, including audio and video recordings of controlled buys, he was absolutely innocent of all counts and went to trial to contest all counts; such strong convictions are rarely amenable to plea deals. In a similar vein, Attorney Primmer testified that Petitioner was dead set on going to trial and would not have accepted a deal, regardless of what was offered him. The fact is that, though Petitioner was facing, at best, life in prison on count 1 if convicted

and, at best, 10 years on counts 2 through 5 if convicted, he refused the Government's offer to pursue a cooperation agreement.[9]  So, it is difficult to conclude, given Petitioner's frame of mind prior to trial, that there is a reasonable probability that Petitioner would have attempted to pursue a cooperation agreement if he had known he was facing 5 counts of life.

Finally, criminal defendants, even if facing 5 counts of life and seemingly insurmountable evidence of guilt, are not entitled to cooperation agreements.  On the contrary, such circumstances, practically speaking, make the likelihood of a cooperation agreement even more unlikely.  Though the Government indicated it was willing to discuss a cooperation agreement with Petitioner, no deal was actually offered. Petitioner fails to claim he had information which was sufficiently valuable to justify a cooperation agreement. Therefore, it cannot be said that if Petitioner had known he was facing 5 potential life sentences, and if he decided to pursue a cooperation agreement, there is a reasonable

---

[9] The Government even went so far as to set up a meeting with Abdul Turner, who ultimately testified as a witness against Petitioner.  Mr. Turner pleaded with Petitioner to cooperate, but Petitioner was obstinate.

probability that the results of the proceedings would have
been different.  As such, Petitioner was not prejudiced.[10]

## III. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2255(c)(2), a district court may issue
a certificate of appealability which will allow a petitioner
to appeal the denial of his § 2255 petition.  The district
court should only issue a certificate of appealability if
"'the applicant has made a substantial showing of the denial
of a constitutional right.'"  Slack v. McDaniel, 529 U.S. 473,
483 (2000) (citing 28 U.S.C. § 2253(c)).  In Slack, the
Supreme Court defined "substantial showing" as follows:

> To obtain a [certificate of a
> appealability] under § 2253(c), a habeas
> prisoner must make a substantial showing of
> the denial of a constitutional right, a
> demonstration that . . . includes showing
> that reasonable jurists could debate
> whether (or, for that matter, agree that)
> the petition should have been resolved in
> a different manner or that the issues
> presented were "'adequate to deserve the
> encouragement to proceed further.'"

---

[10] The Government maintained that there can be no
prejudice related to plea negotiations if a Defendant goes to
trial.  While this Court agrees that prejudice will not exist
in most circumstances where a defendant chooses to invoke his
right to trial, this Court thinks that if Petitioner had been
more open to a plea negotiations prior to trial and if a solid
plea agreement had been offered, there would be prejudice.

> Barefoot, 463 U.S., at 893, and n.4, 103 S.
> Ct. 3383, 77 L. Ed. 2d 1090 (sum[ming] up
> the "substantial showing" standard).

Slack, 529 U.S. at 483-84.

After thoroughly considering the record in this matter, this Court is persuaded that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." Slack, 529 U.S. at 483-84. This Court's decisions in this case were judgment calls, and this Court is of the opinion that all its judgment calls should be reviewable. As precedent in Tiedeman v. Benson requires, a certificate of appealability is granted in relation to each of Petitioner's claims. 122 F.3d 518, 520 (8th Cir. 1997)

**IV. CONCLUSION**

While this Court does not agree with how the sentencing guidelines applied to Petitioner, this Court's primary duty is to uphold and enforce the Constitution and laws of the United States. Although it may be argued the severity of Petitioner's sentence resulted in an injustice, a greater injustice would occur if this Court failed to perform its primary duty.

**Therefore, because Petitioner has failed to meet his burden to show that his sentence was in some manner contrary**

**to the laws or the Constitution of the United States, his**

**motion for relief pursuant to § 2255 is hereby denied.**

**IT IS SO ORDERED** this 10th day of April, 2012.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa